UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60338-RAR

**HELENA URÁN BIDEGAIN,** *et al.*,

    Plaintiffs,

v.

**LUIS ALFONSO PLAZAS VEGA**,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS AND MOTION FOR JUDICIAL NOTICE

The Torture Victim Protection Act requires a plaintiff to exhaust remedies in the country where the alleged torture or extrajudicial killings occurred before a United States district court may consider the claims. At the motion to dismiss stage of these proceedings, Defendant maintains this exhaustion requirement is akin to a jurisdictional bar to suit, while Plaintiffs advance it is an affirmative defense, and therefore an insufficient basis for dismissal. Eleventh Circuit precedent compels district courts to treat the TVPA's exhaustion requirement as an affirmative defense—not a jurisdictional requirement. Further, Defendant's request that the Court abstain from addressing this dispute based on international comity is unwarranted given the dissimilarly between the instant proceedings and Defendant's prior criminal proceedings in Colombia. Thus, the Court **DENIES** Defendant's Motion to Dismiss.[1]

## BACKGROUND

On November 6, 1985, armed M-19 guerillas, a Colombian terrorist group ("M-19"), stormed Colombia's Supreme Court complex in Bogotá, the Palace of Justice, and held

---

[1] Defendant has filed a Motion to Dismiss ("Mot.") and a Request for Judicial Notice of Facts in Support of his Motion to Dismiss ("Req."). [ECF Nos. 28, 29]. Both Motions are now ripe for review. *See* Response to Motion ("Resp.") [ECF No. 41]; Response to Request ("Resp. to Req.") [ECF No. 42]; Reply [ECF No. 46]; Sur-Reply [ECF No. 49].

approximately 300 people hostage. Compl. ¶ 41. "Over the next two days, the Colombian military, in response, engaged in a brutal retaking of the Palace of Justice that left the building largely destroyed and nearly [one] hundred civilians dead," including Colombian lawyers and judges who were in the Supreme Court complex. *Id.* ¶¶ 1–2.

This case is about the torture and extrajudicial murder of one of those judges, Magistrate Carlos Horacio Urán Rojas, an Auxiliary Justice of the Council of State. *Id.* ¶ 2. Plaintiffs are three of Magistrate Urán's daughters. They bring this action pursuant to the TVPA, seeking compensatory and punitive damages against Defendant, Luis Alfonso Plazas Vega. Defendant Vega was a lieutenant colonel and the commander of the Colombian Army's 13th Brigade Cavalry School in Bogotá. Defendant was given command of the mission to retake the Palace of Justice. *Id.* ¶ 24. Plaintiffs allege that, under Defendant's command, Magistrate Urán was escorted out of the Palace of Justice alive, taken into the custody of the Colombian military, and tortured and executed. *Id.* ¶¶ 67–69, 74. Plaintiffs further allege that following the retaking of the Palace of Justice, "the military mounted a campaign of disinformation and intimidation" to cover up crimes the military committed, including the torture and killing of Magistrate Urán. *Id.* ¶ 89.

In 2007, an investigation in Colombia uncovered evidence of Magistrate Urán's torture and execution. Compl. ¶ 99.[2] At that time, Plaintiffs "pushed to have a criminal investigation into his death opened" in Colombia. *Id.* Upon Plaintiffs' insistence, "the Colombian Prosecutor General assigned Magistrate Urán's case to prosecutor Angela Buitrago in 2008, who opened an investigation in 2010. After prosecutor Angela Buitrago launched her investigation and sought to interview prominent military officials however, the Prosecutor General removed her from the case

---

[2] Initially, the Colombian Military denied ever having Magistrate Urán in its custody. Compl. ¶ 94. But in 2007, when the Colombian prosecutor's office searched the premises of the 13th Brigade, Magistrate Urán's belongings, including the contents of his wallet, were found hidden in a locked vault. *Id.* ¶ 96. That same year, video records and eyewitness testimony emerged indicating that Magistrate Urán exited the Palace of Justice alive. *Id.*

and reassigned it to the National Unit for Human Rights and International Humanitarian Law." *Id.* ¶ 100. Plaintiffs allege that once the case was reassigned, the investigation stalled and has not led to any tangible results. *Id.*

Plaintiffs allege that because of the lack of progress in Colombia, they filed a petition before the Inter-American Court of Human Rights, which "found that Colombian state actors tortured and killed Magistrate Urán following his exit from the Palace of Justice." *Id.* ¶ 101. In 2014, the Inter-American Court of Human Rights "ordered the Colombian government to investigate and prosecute those responsible." *Id.* Plaintiffs further allege that despite this order, at the time of filing this case, "no individual has been investigated or held accountable in Colombia for Magistrate Urán's killing." *Id.*

Defendant now moves to dismiss Plaintiffs' Complaint on two grounds and requests that the Court take judicial notice of certain documents and purported facts. First, Defendant argues that the Court should dismiss Plaintiffs' Complaint because Plaintiffs have failed to "exhaust[] adequate and available remedies in the place in which the conduct giving rise to the claim occurred" as required by the TVPA. Mot. at 4 (citing 28 U.S.C. § 1350, note, § 2(b)). Specifically, Defendant argues that Plaintiffs have failed to seek remedies under Colombia's Victims Law (Law 1448/2011), which Defendant asserts was "specifically enacted to compensate victims of military conflict," or raise a claim against the government pursuant to Article 90 of the Colombian Constitution. Mot. at 11. In response, Plaintiffs argue that Defendant cannot raise an exhaustion of remedies argument at the motion to dismiss stage; rather, it is an appropriate argument for summary judgment because the Eleventh Circuit has deemed the TVPA's exhaustion of remedies requirement an affirmative defense. Plaintiffs further argue that regardless of whether it is an appropriate argument for a motion to dismiss, Plaintiffs have already exhausted available local remedies, including the two identified by Defendant in his Motion. Resp. at 1.

Defendant's second argument is that the Court should decline to hear Plaintiffs' case under the doctrine of international comity. Defendant asserts that he was previously charged and convicted "as a co-perpetrator of crimes of forced disappearances for 11 people" and sentenced to 30 years in prison. Mot. at 15. However, Defendant asserts that two years later, his conviction was overturned with respect to nine of the victims. *Id.* at 16. After Defendant served nine years in prison, Defendant asserts that "Colombia's Supreme Court overturned his conviction in its entirety." *Id.* at 22. Plaintiffs argue, "Defendant's international comity argument fails because his purported criminal acquittal in Colombia concerned a different subject matter, different issues and different parties than those before this Court." Resp. at 1.

Lastly, Defendant filed a Request for Judicial Notice of Facts in Support of his Motion to Dismiss. In this Request, Defendant asks "that the Court take judicial notice of the fact that both Article 90 of the Colombian Constitution of 1991 and Colombian Law 1448/2011 provided avenues for recovery in Colombia for Plaintiffs in connection with Mr. Urán Rojas' passing." Req. at 1. In support of this request, Defendant argues that "federal courts have discretion to judicially notice the laws of foreign countries pursuant to the fact-finding procedures contained in Federal Rule of Civil Procedure 44.1." *Id.* at 2. Plaintiffs argue that the Court may (and should) take judicial notice of the existence of the two Colombian laws Defendant identifies but not Defendant's interpretation of how these laws impact this case. Resp. to Req. at 2.

## **LEGAL STANDARD**

Defendant brings a Rule 12 Motion to Dismiss for failure to exhaust remedies under the TVPA. In the alternative, Defendant requests that the Court apply the doctrine of international comity and abstain from hearing this case. The parties vehemently disagree as to whether Defendant must bring his Motion to Dismiss under a sub-part of Federal Rule of Civil Procedure 12(b). Mot. at 4; Resp. at 4. Nevertheless, Defendant asks this Court to analyze his motion in the

same way the Court would analyze a motion to dismiss under Rule 12(b)(1), which Defendant argues is analogous. Mot. at 5.[3] Because Defendant asks this Court to consider evidence outside the four corners of the Complaint, the Court finds it appropriate to address Defendant's Motion under Rule 12(b)(1). *See, e.g.*, *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1114 (S.D. Fla. 2016) (exhaustion argument under TVPA brought as Rule 12(b)(1) motion to dismiss); *Rojas Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1327 (S.D. Fla. 2009) (same).

Challenges under Rule 12(b)(1) of the Federal Rules of Civil Procedure can exist in two substantially different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). At issue here is a factual attack, which challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quotation and citation omitted). "Thus, where a defendant factually attacks the existence of subject matter jurisdiction, the Court may look beyond the complaint to determine whether such jurisdiction exists." *Cabello Barrueto v. Fernandez Larios*, 291 F. Supp. 2d 1360, 1364 (S.D. Fla. 2003).

## **ANALYSIS**

The Court begins by addressing Defendant's contention that Plaintiffs have failed to exhaust remedies in Colombia. Next, the Court considers Defendant's argument that the Court

---

[3] Alternatively, Defendant asks this Court to dismiss the case pursuant to Rule 12(b)(6) based solely on the facts plead on the face of the Complaint—or to consider converting the Motion to Dismiss into a Motion for Summary Judgment pursuant to Rule 12(d). Mot. at 7, n.11. The Court declines to do so. *See Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 929 (11th Cir. 2023) (citing 5C Arthur R. Miller & A. Benjamin Spencer, Fed. Practice & Procedure § 1369 (3d ed. & April 2022 update) (explaining that a court has discretion to consider matters outside the pleadings under Rule 12(c) and convert the motion into one for summary judgment under Rule 56)).

should decline to hear this case as a matter of international comity. And lastly, the Court considers Defendant's separate Request for Judicial Notice.

### I. *Exhaustion of Remedies in Colombia*

The TVPA provides a cause of action to hold liable "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation— (1) subjects an individual to torture" or "(2) subjects an individual to extrajudicial killing." TVPA, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350, note, § 2(b)). The TVPA contains an "exhaustion of remedies" clause which states, "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." *Id.*

It is well settled in the Eleventh Circuit that the TVPA exhaustion requirement "is an affirmative defense" for which the defendant bears a "substantial" burden of proof. *Jean v. Dorélien*, 431 F.3d 776, 781 (11th Cir. 2005). "Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* at 782 (quoting S.Rep. No. 102-249, at 9–10). As explained by the Eleventh Circuit, the Senate Report to the TVPA makes clear that "[t]he ultimate burden of proof and persuasion on the issue of exhaustion of remedies [] lies with the defendant." *Id.* (citing *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 CIV. 8386 (KMW), 2002 WL 319887, at *17 (S.D.N.Y. Feb. 28, 2002) ("Other courts that have considered the exhaustion defense have recognized that the legislative history of the TVPA 'indicates that the exhaustion requirement . . . was not intended to create a prohibitively stringent condition precedent to recovery under the statute.'")). "Because it is an affirmative defense, exhaustion of local remedies *need not be pled in a complaint* under the TVPA . . . ." *In re Chiquita*, 190 F. Supp. 3d at 1114 (emphasis added); *see Perry v. Merit Sys.*

Case 0:22-cv-60338-RAR   Document 56   Entered on FLSD Docket 03/14/2023   Page 7 of 14

*Prot. Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017) (noting that affirmative defenses are "not something the plaintiff must anticipate and negate in her pleading"); *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (explaining that "plaintiffs are not required to negate an affirmative defense in their complaint").

Defendant argues there are two specific laws—Colombia's Victims Law (Law 1448/2011) and Article 90 of the Colombian Constitution—that could provide "adequate and available remedies" to Plaintiffs in Colombia, but Plaintiffs have failed to exhaust these remedies. In response, Plaintiffs argue that they have exhausted the two remedies identified by Defendant, Resp. at 12–13, but regardless, the Court cannot consider evidence of Defendant's exhaustion argument at the motion to dismiss stage, since exhaustion is an affirmative defense to be raised after Plaintiffs have had an opportunity to develop their case, Resp. at 4.

The Court finds that Defendant's exhaustion argument is better suited for summary judgment. Reserving this argument for summary judgment is common practice in this jurisdiction and others; it allows the Court to properly consider all relevant evidence provided by both parties—much in the same way the Court would handle any other affirmative defense. *See, e.g.*, *Jaramillo v. Naranjo*, No. 10-21951, 2021 WL 4427455, at *9 (S.D. Fla. Sept. 27, 2021) (granting Plaintiff's motion for summary judgment holding that "there is evidence that Plaintiffs exhausted local remedies because they sought relief through Colombia's criminal justice system and the Colombia Justice and Peace Process" but that "[t]hose efforts have, of course, been fruitless because there has been no responsibility for a murder that took place almost 20 years ago."); *Jara v. Nunez*, No. 613CV1426ORL37GJK, 2016 WL 2348658, at *4 (M.D. Fla. May 4, 2016) (granting summary judgment for plaintiffs on exhaustion where defendant "demonstrated an adequate and available local remedy" but plaintiff proved the alternative remedy was "unobtainable, ineffective, and futile for Plaintiffs"); *see also Doe v. Drummond Co.*, No. 7:09-CV-01041-RDP, 2009 WL 9056091, at

Page **7** of **14**

\*17 (N.D. Ala. Nov. 9, 2009) ("In this case, whether Defendants are entitled to the affirmative defense on exhaustion of remedies is not appropriate for decision on a motion to dismiss.").

Despite this standard practice, Defendant argues that this Court should dismiss Plaintiffs' Complaint for failure to exhaust remedies in Colombia because the practice is permitted in cases involving the Prisoner Litigation Reform Act ("PLRA"), which requires the exhaustion of administrative remedies. However, as explained in *In Re Chiquita*, defendants are not entitled to a Rule 12(b)(1) dismissal based on the affirmative defense of exhaustion of local remedies in the TVPA context. 190 F. Supp. 3d at 1113. There, the parties invited the district court to "consider and weigh extrinsic evidence in assessing the viability of defendants' exhaustion defense at the motion to dismiss stage" by analogizing to the "assertion of the defense of failure to exhaust administrative remedies under the [PLRA]." *Id.* at 1114. The district court, however, rightly declined to do so, observing that "[t]he parties do not cite, nor does the Court discern, any authority requiring the defense of failure to exhaust local remedies under the TVPA to similarly be treated, for procedural purposes, like a jurisdictional defense" as the Eleventh Circuit had done with respect to the PLRA. *Id.* (citing *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008)). The court explained, "[s]uch an approach would run contrary to the Eleventh Circuit's announcement that 'the exhaustion requirement pursuant to the TVPA is an affirmative defense,' on which the defendant bears a 'substantial' burden of proof." *Id.* (citing *Jean*, 431 F.3d at 781).

Defendant's reliance on *Rojas Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326 (S.D. Fla. 2009), does not compel a different result. In *Rojas Mamani*, the district court considered a defendant's motion to dismiss for failure to exhaust remedies in Bolivia as required by the TVPA, where plaintiffs' family members were victims of extrajudicial killings. The motion was presented as a Rule 12(b)(1) motion to dismiss, and the court noted that "[t]hough not jurisdictional in the 'subject-matter' sense, § 2(b)—when applicable—prevents a court from reaching the merits of a

TVPA claim." 636 F. Supp. 2d at 1328. In reaching its conclusion, the court analyzed evidence submitted by the parties outside the four corners of the complaint as permitted by Rule 12(b)(1)—and analogized the defendant's exhaustion arguments under the TVPA to the exhaustion of administrative remedies under the PLRA. *Id.* (citing *Bryant v. Rich*, 530 F.3d 1368, 1371 (11th Cir. 2008)).

A closer review of the *Rojas Mamani* court's reliance on *Bryant*, however, reveals that PLRA caselaw is inapposite to the exhaustion of remedies under the TVPA. To be clear, the Eleventh Circuit has explained that failure to exhaust administrative remedies under the PLRA can be raised in a Rule 12(b)(1) motion to dismiss, and a district court can resolve a factual dispute in this context if the merits of the claim are not adjudicated and the plaintiff is given an opportunity to develop the record. *Bryant*, 530 F.3d at 1375–76; *see also Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424–25 (11th Cir. 2010) (distilling general principles regarding exhaustion in *Bryant* and explaining district court did not err by considering "evidence outside the pleadings" or "making fact findings" upon ruling on a "Rule 12(b) motion to dismiss based solely on exhaustion of administrative remedies and not on the merits of [plaintiff's] claims"). But Defendant's reliance on *Bryant* and *Tillery* ignores key textual differences between the TVPA and the PLRA.

Notably, the TVPA and PLRA deal with different types of exhaustion, such that the Court cannot equate the interpretation of one statute with the other. The PLRA requires exhaustion of *administrative* remedies in the United States, while the TVPA requires exhaustion of "adequate and available remedies in the place in which the conduct giving rise to the claim occurred." 28 U.S.C. § 1350, note, § 2(b). While the exhaustion of administrative remedies under the PLRA may be readily apparent, determining whether "adequate and available" foreign remedies have been exhausted requires the consideration of evidence and legal records from another country. *See*

*Jean*, 431 F.3d at 782–83 ("[T]he district court relied exclusively on an affidavit reflecting that Jean had obtained a legally binding judgement in Haiti against Dorélien. However, the district court failed to consider Jean's allegations and assertions that this judgment is ineffective and currently unenforceable in Haiti.").

Another consequential difference between the TVPA and PLRA is the language used in each statute: one creates a jurisdictional bar while the other creates an affirmative defense. The text of the PLRA states, *"[n]o action shall be brought* with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA's language bars plaintiffs from *bringing* suit altogether until they exhaust administrative remedies. In contrast, the TVPA states that "a court shall decline to hear a claim" if adequate and available remedies have not been exhausted. 28 U.S.C. § 1350, note § 2(b). Thus, unlike the PLRA, the plain language of the TVPA does not indicate the presence of a jurisdictional bar—it establishes an affirmative defense available *after* filing suit, but before the Court considers the merits of the claim. *See Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (explaining that an affirmative defense is "a defense that may be pled in a case which is already within the court's authority to decide, and the ability of a party to assert such a defense has nothing to do with the court's power to resolve the case.").

As a sister court observed in a similar case, "[t]he truth of Defendant's exhaustion of remedies argument remains to be seen, but it is better left for resolution at the summary judgment stage when Defendant can fully brief the alleged remedies abroad which have not been exhausted." *Jara*, 2015 WL 8659954, at *2 (quotation omitted). In other words, the Court is not in a position to address exhaustion until Plaintiffs have had an opportunity to develop the record, at which point Defendant may re-assert this argument at the summary judgment stage of the proceedings.

## II. International Comity

Next, Defendant asks this Court to abstain from hearing this case under the doctrine of international comity. Defendant seeks to have it both ways. Defendant first argues that Plaintiffs have not exhausted remedies in Colombia, but simultaneously argues that Colombian courts have already adjudicated this case. The Court denies Defendant's abstention request on this basis.

Defendant provides a brief procedural history of charges against him in connection with the Colombian military's response to the 1985 M-19 attack. He states that he was "charged as a co-perpetrator of crimes of forced disappearances for 11 people" on February 11, 2008. Mot. at 15. Then, "[h]e was convicted of these crimes on June 9, 2010, and sentenced to 30 years. Two years later, on January 30, 2012, the superior court of Bogotá overturned Plazas Vega's conviction with respect to nine of the 11 disappeared people." *Id.* In support of these statements, Defendant cites three news articles. *See* Mot. at 15, n.20–22.

Defendant then explains, "on December 16, 2015, after being incarcerated for nearly nine years for alleged crimes that Plazas Vega did not commit, Colombia's Supreme Court overturned his conviction in its entirety." *Id.* at 16. Defendant quotes from the Colombia Supreme Court's decision, which purportedly says "there is no existing evidence that allows us to arrive at certainty about the criminal responsibility of the accused [Plazas Vega], […] since the uncertainty will endure, […] it is not possible to declare him criminally responsible. In this matter the *in dubio pro reo* prevails in favor of PLAZAS VEGA." *Id.* (quoting Mot. Ex. A, Corte Suprema de Justicia [C.S.J.] [Supreme Court of Justice], Sala de Casación Penal, 15 diciembre 2015, M.P.: Luis Guillermo Salazar Otero, Radicación 38957, Gaceta Judicial [G.J.] (No. 446, p. 355)).

The first problem with Defendant's argument is that Defendant's documentation is not properly before the Court. The Colombia Supreme Court opinion and news articles about Defendant's criminal proceedings are provided in Spanish. Defendant did not submit an English

translation.  Parties must provide English translations of documents originally written in other languages.  *See Nassar v. Nassar*, No. 20-14033, 2022 WL 82335, at *2 (S.D. Fla. Jan. 7, 2022) (explaining that "documents used in a court proceeding, when not in English, are to be provided with an English translation").  Defendant has not done so here.

Putting aside this significant problem, the most important reason that the Court denies Defendant's request for abstention is because the proceedings upon which Defendant relies did not involve the Plaintiffs in this case or the death of Magistrate Urán.  It is long-established that international comity is based on the principle that "there has been opportunity for a full and fair trial abroad" involving the parties against whom the foreign judgment is invoked.  *Hilton v. Guyot*, 159 U.S. 113, 158 (1895); *see also Hershey Co. v. Cadiz*, No. 05-60999, 2006 WL 8431631, at *5 (S.D. Fla. Sept. 25, 2006) (noting that "[e]nsuring the ability of the parties to fully and fairly litigate their claims in some tribunal . . . is a paramount goal of international abstention principles") (quoting *Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1522 (11th Cir. 1994)).  Courts do not abstain from hearing cases based on international comity where there has not been a judgment issued over the subject matter being litigated or where one of the parties was not a party to the foreign judgment.  *See, e.g.*, *RCTV Int'l Corp. v. Rosenfeld*, No. 13-23611, 2014 WL 11944274, at *2 (S.D. Fla. Jan. 31, 2014) (denying defendant's motion to abstain "[e]ven without considering the validity of the [foreign] judgment" where plaintiff did not have an opportunity to litigate in the foreign proceeding).

Here, Plaintiffs were not parties to Defendant's criminal proceedings and the torture and extrajudicial killing of Magistrate Urán was not the basis for any of Defendant's criminal charges. While Defendant did not provide an English translation for any of the documents related to the criminal proceedings, Defendant admits, "Urán Rojas' passing was not the subject of Plazas Vega's prosecution . . . ."  Mot. at 16.  Thus, Defendant's alleged acquittal—which involved

different parties, different subject matter, and different theories of liability—provides no basis for this Court to abstain from exercising jurisdiction over Plaintiffs' TVPA suit. The Court has the utmost respect for the judicial proceedings of sister countries, like Colombia. But here, Defendant's criminal proceedings simply did not involve these Plaintiffs or the subject matter of the case before this Court. The Court therefore denies Defendant's request for abstention.

### III. *Motion for Judicial Notice*

In support of his Motion to Dismiss, Defendant filed a Request for Judicial Notice. Defendant requests that pursuant to Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 44.1, the Court take judicial notice "of the fact that both Article 90 of the Colombian Constitution of 1991 and the Colombian Law 1448/2011 provided avenues for recovery in Colombia for Plaintiffs in connection with Mr. Urán Rojas' passing." Req. at 1. Plaintiffs do not oppose the request that the Court take judicial notice of the existence and validity Article 90 of the Colombian Constitution of 1991 and the Colombian Law 1448/2011 but oppose the Court taking judicial notice of Defendant's interpretation that these laws provided avenues for recovery for Plaintiffs. Resp. to Req. at 2–3. Because the Court declines to decide at this time whether Plaintiffs have exhausted remedies in Colombia, Defendant's request for judicial notice is denied as moot.

## **CONCLUSION**

Defendant's argument that Plaintiffs have failed to exhaust local remedies in Colombia as required by the TVPA is an affirmative defense. Thus, this determination is best left for summary judgment when the Court will be better equipped with a more developed evidentiary record. Defendant's request that the Court abstain from hearing this case under the doctrine of international comity is misplaced, as the criminal proceedings upon which Defendant relies did not involve the same parties and subject matter as the case presently before the Court.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, [ECF No 28], is **DENIED**. Given the denial of Defendant's Motion to Dismiss, Defendant's Request for Judicial Notice is **DENIED AS MOOT.**

**DONE AND ORDERED** in Miami, Florida, this 14th day of March, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**