**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-60338-RAR**

**HELENA URÁN BIDEGAIN**, *et al.*,

Plaintiffs,

v.

**LUIS ALFONSO PLAZAS VEGA,**

Defendant.
_______________________________________/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant's Motion for Summary Judgment ("Motion"), filed on May 26, 2026, [ECF No. 276].[1] Having carefully considered the relevant submissions and applicable law, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, [ECF No. 276], is **DENIED** as set forth herein.

## BACKGROUND[2]

This action arises from the November 1985 Palace of Justice incident, where, on November 6, 1985, approximately thirty-five members of the M-19 guerilla organization ("M-19") launched an armed attack on Colombia's Palace of Justice in Bogotá. Def.'s SMF ("SMF"), [ECF No. 276-11] ¶¶ 1–2; Pls.' Resp. in Opp'n to Def.'s SMF ("SMF Resp."), [ECF No. 289-2] ¶¶ 1–2. After M-19 entered the Palace, taking hundreds of civilians, Supreme Court judges, Council of State

[1] The Motion is fully briefed and ripe for adjudication. *See* Pls.' Opp'n to Def.'s Mot. ("Resp."), [ECF No. 289]; Def.'s Reply to Pls.' Resp. to Def.'s Mot. ("Reply"), [ECF No. 297].

[2] Because the Court writes only for the parties who are already familiar with the facts, the facts set out herein are only those that are relevant to the legal issues.

magistrates, court employees, attorneys, and visitors hostage, the Colombian military initiated a large-scale recovery[3] operation which involved units from the Colombian Army's 13th brigade. SMF ¶¶ 3–4; SMF Resp. ¶¶ 3–4. Over the course of the two-day operation, large portions of the Palace of Justice were destroyed by fire combat and damage and nearly one hundred individuals were killed, including eleven justices of the Supreme Court. SMF ¶ 6; SMF Resp. ¶ 6. And after the operation, numerous individuals were reported missing. SMF ¶ 6; SMF Resp. ¶ 6.

During the military's operation, Magistrate Carlos Horacio Urán Rojas ("Magistrate Urán"), an Auxiliary Justice of the Council of State, was killed. SMF ¶ 7; SMF Resp. ¶ 7. Defendant Luis Alfonso Plazas Vega, a Lieutenant Colonel and commander of the Cavalry School, one of the seven battalions assigned to the 13th Brigade of the Colombian Army, *see* SMF ¶ 4; SMF Resp. ¶ 4, was involved in the military recovery operation of the Palace of Justice. On February 15, 2022, Plaintiffs, three daughters of Magistrate Urán, brought the instant action pursuant to the Torture Victims Protection Act ("TVPA"), alleging that Defendant participated in the torture and extrajudicial murder of their father, was given command of the mission to retake the Palace of Justice, and, under his command, Magistrate Urán was escorted out of the Palace of Justice alive, taken into the custody of the Colombian military, and tortured and executed. Compl., [ECF No. 1] ¶¶ 2, 24, 67–69, 74.

Defendant was previously investigated and prosecuted in Colombia in connection with the disappearances relating to the *Especiales*, the system that Plaintiffs allege was designed and deployed by the military to "identify, interrogate, forcibly disappear, torture, and, often, extrajudicially kill any suspected guerillas or guerilla sympathizers among the hostages exiting the

[3] The parties dispute the extent to which the operation can be characterized as a "recovery" operation. Plaintiffs allege that "the Colombian military 'engaged in a brutal retaking of the Palace of Justice'—not a 'recovery.'" SMF Resp. ¶ 6 (quoting Compl., [ECF No.1] ¶ 1).

Palace of Justice." SMF ¶¶ 8, 10 (citing Compl., [ECF No. 1] ¶ 49); SMF Resp. ¶¶ 8, 10. Following an investigation, the Colombian Supreme Court found the evidence insufficient to establish the degree of conviction[4] required and entered judgment in Defendant's favor. SMF ¶¶ 10–11; SMF Resp. ¶¶ 10–11.

On May 26, 2026, Defendant filed the instant Motion, requesting the Court enter judgment in Defendant's favor on all claims on the grounds that Plaintiffs cannot establish Defendant's liability under the doctrine of command responsibility; that Plaintiffs cannot establish that Defendant personally participated in, directed, or ordered any extrajudicial killing or forced disappearance of Magistrate Urán; and that summary judgment is warranted based on international comity. *See generally* Mot.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted). The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to

[4] Defendant maintains that he "was ultimately acquitted of all charges", *see* SMF ¶ 10, but Plaintiffs note that Defendant fails to "identify the 'disappearances,' the 'all charges,' and 'those allegations' that are the subject of ¶ 10." SMF Resp. ¶ 10. And Plaintiffs also underscore that ultimately, "[t]he Colombian Supreme Court found the evidence insufficient to 'establish the degree of conviction required' . . . to support Defendant's conviction as a direct participant, co-perpetrator or 'mediate perpetrator' in the forced disappearance of Irma Franco Pineda and Carlos Rodriquez Vera." *Id.*

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the moving party shoulders its initial burden, the burden shifts to the non-moving party to "demonstrate the existence of evidence that would support a verdict in its favor." *United of Omaha Life Ins*, 894 F.2d at 1557 (citing *Celotex*, 477 U.S. at 322-23). "If reasonable minds might differ on the inferences arising from undisputed facts, then [a court] should deny summary judgment." *Hinesville Bank v. Pony Exp. Courier Corp.*, 868 F.2d 1532, 1535 (11th Cir. 1989).

## ANALYSIS

As noted herein, Defendant seeks summary judgment as to all counts of Plaintiffs' Complaint. Plaintiffs respond that Defendant does not come close to satisfying his burden under Rule 56 for three reasons: (1) "material triable issues preclude summary judgment on the only theory Defendant's Motion addresses: command responsibility"; (2) Defendant "wholly fails to address his liability as a co-conspirator for the TVPA violations at issue"; and (3) "Defendant attempts to recycle comity and abstention arguments that the Court previously rejected, but provides no basis for the Court to depart from its prior reasoning." Resp. at 6–7.[5] The Court agrees.

*First*, Defendant argues that Plaintiffs cannot establish Defendant's liability under the doctrine of command responsibility. "The TVPA allows victims of violations of international law, or those victims' representatives, to bring a civil cause of action in federal district court against commanders under the international law doctrine of command responsibility." *Ford ex rel. Est. of*

[5] In the event of any discrepancy between the page numbers in the footer of a document and those in the CM/ECF heading, the page numbers used herein refer to the page number reflected in the CM/ECF heading.

*Ford v. Garcia*, 289 F.3d 1283, 1286 (11th Cir. 2002). To do so, the following "essential elements of liability under the command responsibility doctrine" must be established:

> (1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) that the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes.

*Id*. at 1288. Plaintiffs' Response underscores how issues of fact persist at every step of the inquiry.

As to the first prong, to establish a superior-subordinate relationship, Defendant must have exercised effective control over the individual or individuals who tortured and/or killed Magistrate Urán. *Mamani v. Berzain*, 21 F. Supp. 3d 1353, 1376 (S.D. Fla. 2014) (citing *Ford*, 289 F.3d at 1290). Defendant contends that Plaintiffs cannot identify the individual or individuals who committed such unlawful acts, and that "it has been established in Colombia that Defendant only commanded the Cavalry Battalion, a subordinate tactical unit that fell under the 13th Brigade, not the recovery of the Palace as a whole." Mot. at 7–8. Further, "[o]nly a portion of Defendant's battalion was deployed during the recovery of the Palace of Justice" and "the section that would have included intelligence-related personnel and operations[] did not participate in the recovery operation[.]" *Id*. at 8. Plaintiffs respond that "effective control" may be "*de jure* or *de facto*" and that Defendant overlooks *de facto* control. Resp. at 10. Plaintiffs are correct.

"A *de jure* superior-subordinate relationship exists for purposes of the command responsibility doctrine when the superior has been appointed, elected or otherwise assigned to a position of authority *for the purpose of commanding or leading* other persons who are thereby to be legally considered his subordinates." *Mamani v. Berzain*, 309 F. Supp. 3d 1274, 1306 n.35 (S.D. Fla. 2018) (internal quotation omitted). However, "[a] *de facto* superior-subordinate relationship exists under the command responsibility doctrine when one party—the superior—has

acquired over one or more people enough authority to prevent them from committing crimes or to punish them when they have done so." *Id*. (quotation omitted). Thus, "*de facto* officials . . . can be held responsible without a showing of legal authority." *Ford*, 289 F.3d at 1298 (Barkett, J., concurring).

Here, Defendant points to the command structure of the Colombian military and the 13th Brigade, as well as the fact that Defendant only commanded the Cavalry Battalion of that brigade—rather than "recovery operation of the palace as a whole." Mot. at 4–6, 8. They point to findings by the Colombian Supreme Court that Defendant did not issue any orders to soldiers inside the Casa del Florero. Mot. at 9. Thus, according to Defendant, "Plaintiffs cannot meet their burden of proving, through admissible evidence, that Defendant exercised effective control over any alleged perpetrator . . . [nor can they] identify any subordinate actor under Defendant's command who allegedly harmed [Defendant.]" *Id*. at 9–10.

In making these arguments, Defendant overlooks the significant evidence that may indicate that Defendant exercised *de facto* control. For example, Plaintiffs highlight testimony from witness Ricardo Gamez Mazuera, an informant for the Army. Resp. at 11. Mr. Gamez specifically testified that Defendant "ordered two guards to 'take him [a hostage] there, you work on him, and you report to me every two hours,' after which the guards led that hostage to the second floor." Resp. at 12 (quoting Gamez Tr. at 45:1-10). Mr. Gamez further testified that he understood "those two individuals had to have been subordinates" and that he "undoubtedly" believed that "Mr. Plazas Vega had the authority to give that order to his two subordinates[.]" *Id*. (quoting Gamez Tr. at 54:15-20; 54:22-55:1). Plaintiffs also point to at least nine other pieces of evidence from the record that bear on whether Defendant exercised "'effective control' of the *especiales* system that resulted in Magistrate Urán's torture and killing[.]" Resp. at 12–14.

Defendant's Reply fails to rebut the evidence proffered by Plaintiffs and does not sufficiently respond to the question of whether Defendant may have exercised *de facto* authority. He attempts to discredit such statements on the basis that "Colombia's highest criminal tribunal already considered and rejected" such evidence and that "a majority are hearsay statements that would not meet any admissibility standard in Court for it to bear any weight." Reply at 5. But, as will be explained herein, the previous judicial proceedings are not binding on this Court. And Plaintiffs are entitled to "refer the district court to 'pleadings, depositions, answers to interrogatories, and admissions on file'" in opposing a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (quoting FED. R. CIV. P. 56(c)). Defendant also attempts to discredit Gamez's statements because he did not "know exactly who those individuals [Defendant was speaking to] were." Mot. at 11 (quoting Gamez Tr. at 54:11-20). Though this may be true, it does not conclusively refute the fact that Defendant could have exercised *de facto* authority. And, in any event, it is the role of the jury to weigh the credibility of such evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

The Court therefore concludes that there exists a material issue of fact as to whether Defendant possessed the "requisite degree of responsibility, authority, and control" sufficient to establish *de facto* authority. *Doe v. Drummond Co.*, 782 F.3d 576, 610 (11th Cir. 2015). Accordingly, Defendant cannot establish that he is not liable under the doctrine of command responsibility as a matter of law.[6]

---

[6] As to the second two prongs of the "effective control" inquiry, Plaintiffs highlight how genuine issues of material fact exist regarding Defendant's actual and constructive knowledge of torture and extrajudicial killings—as well as Defendant's failure to prevent or punish the misconduct. *See* Resp. at 14–18. But

*Second*, a genuine issue of material fact exists as to whether Defendant may be liable under a theory of conspiracy. While Defendant's Motion is silent as to this theory, Plaintiffs aver that "[t]he record is replete with evidence raising issues of material fact that Defendant conspired with other members of the Colombian military in a common scheme to carry out the torture, extrajudicial killing or forced disappearance of suspected guerillas or guerilla sympathizers via the unlawful *especiales* system that foreseeably resulted in Magistrate Urán's torture and murder." Resp. at 19.

Under the TVPA, to hold Defendant "indirectly liable by means of conspiracy" Plaintiffs must establish "the following three elements":

> (1) two or more persons agreed to commit a wrongful act, (2) [Defendants] joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy.

*Mamani*, 309 F. Supp. 3d at 1310 (quoting *Cabello v. Fernández–Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005)). Defendant argues that Plaintiffs have not born their "burden of producing evidence sufficient for a reasonable jury to find each essential element of [a conspiracy] theory" and have failed to identify evidence of any agreement involving Defendant. Reply at 8. However, Defendant's arguments conflate their burden; Defendant would have the Court find that, in response to *his* Motion for Summary Judgment, *Plaintiffs* would have to prove conspiracy as a matter of law. But that is not the inquiry at this juncture; Defendant, as the party seeking summary judgment, must establish that there is no issue of material fact as to Defendant's involvement (or

given that genuine issues of material fact persist as to the first prong, the Court need not consider these two elements.

lack thereof) in the conspiracy. Put another way, the burden is on Defendant to prove he cannot be held liable, as a matter of law, under a theory of conspiracy. He has failed to do so.

Further, Plaintiffs' Response highlights how "numerous triable issues exist regarding Defendant's role, knowledge, and participation in the military's conspiracy and scheme to eliminate the M-19 through the *especiales* system during the Retaking." Resp. at 23. For example, Plaintiffs present evidence that Defendant may have engaged in interrogations, facilitated transfers of hostages, and served as an informant of the location of the guerillas and hostages inside the Palace of Justice—evidence that may have "assisted the Army in successfully eliminating the remaining guerrillas and completing the Retaking on the afternoon of November 7, 1985." *Id.* at 21–23. Accordingly, the Court cannot find at this stage, as a matter of law, that Defendant did *not* engage in a conspiracy. *See e.g., Mamani*, 309 F. Supp. 3d at 1310 (denying summary judgment because "[t]he record evidence compels the conclusion that a reasonable jury could find Defendants indirectly liable under a theory of conspiracy.").

*Finally*, Defendant asks the Court to "take judicial notice of the Colombian judgments, including Defendant's acquittal and related findings" and assert that "international comity supports summary judgment." Mot. at 16–20. As Plaintiffs point out, the Court previously opined on Defendant's request for abstention on the basis of international comity. *Bidegain v. Plazas Vega*, No. 22-CV-60338-RAR, 2023 WL 2497861, at *5 (S.D. Fla. Mar. 14, 2023). Specifically, the Court found that "Plaintiffs were not parties to Defendant's criminal proceedings and the torture and extrajudicial killing of Magistrate Urán was not the basis for any of Defendant's criminal charges." *Id.* at *6. Thus, because "courts do not abstain from hearing cases based on international comity where there has not been a judgment issued over the subject matter being litigated or where one of the parties was not a party to the foreign judgment"—and given that Defendant's alleged acquittal involved "different parties, different subject matter, and different theories of liability"—

the Court found "no basis [] to abstain from exercising jurisdiction over Plaintiffs' TVPA suit." *Id*. The Court does not find good cause to depart from its previous holding with regards to Defendant's international comity argument. And as explained below, the Colombian judgment does not establish that Defendant is not liable as a matter of law.

As to Defendant's request pursuant to Federal Rule of Evidence 201(b), *see* Mot. at 16, the Court declines to take judicial notice of the Colombian Judgments for the purpose of establishing Defendant's lack of involvement in the underlying offense. Taking judicial notice of facts is "a highly limited process" given that it "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Easterwood v. Carnival Corp*., No. 19-22932, 2020 WL 7042643, at *6 (S.D. Fla. Dec. 1, 2020) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). "[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing *United States v. Garland*, 991 F.2d 328, 332 (6th Cir. 1993) (finding Ghanaian judgment admissible to prove it was rendered but "not judicially notic[ing] the truth of the statements contained in the Ghana judgment because some of these facts may remain in dispute.")).

Indeed, it is often impermissible to take judicial notice of a document "for the truth of the matters asserted in the other litigation[.]" *Id*. (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc*., 969 F.2d 1384, 1388–89 (2d Cir. 1992)). "Indisputability is a prerequisite" to Federal Rule of Evidence 201(b); thus, the "effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence[.]" *Id*. But taking judicial notice of a fact "merely because it has been found to be true in some other action" would not only render "the doctrine of collateral estoppel superfluous", it would also "effectively deprive a party of the right to [have] the jury" decide disputed facts. *Id*.

Here, Defendant asserts that the findings in the Colombian proceedings "bear directly on the factual assertions underlying Plaintiffs' claims and on the reliability of the evidence upon which those claims depend" and that the "Colombian appellate proceedings specifically rejected theories premised upon Defendant exercising operation command over Brigade-level intelligence activities and detainee processing operations." Mot. at 16. Defendant therefore asks the Court to take judicial notice of Defendant's acquittal, the convictions of the M-19 actors, and "the factual findings concerning command structure, operational authority, and evidentiary deficiencies reflected in those proceedings." *Id*. at 17. But to take judicial notice of the factual findings of the Colombian proceedings for the truth of the matter asserted therein would deny Plaintiffs the opportunity to present their evidence to the jury. *See e.g., Easterwood*, 2020 WL 7042643, at *7 ("Plaintiff's request for judicial notice aims to introduce this document for the truth of the matters asserted therein . . . which is at odds with the clear caselaw in this Circuit on judicial notice."). And for the reasons stated herein with respect to international comity, the Court is not bound by the Colombian adjudication. While the outcome of the Colombian proceedings may have some probative value, that determination must be left to the jury.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment, [ECF No. 276], is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 31st day of August, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**