**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-60338-RAR**

**HELENA URÁN BIDEGAIN**, *et al.*,

Plaintiffs,

v.

**LUIS ALFONSO PLAZAS VEGA**,

Defendant.
_________________________________________/

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court on Plaintiffs' Motion for Summary Judgment on Defendant's Second, Third, and Fourth Affirmative Defenses ("Motion"), [ECF No. 274], filed on May 26, 2026. Defendant filed his Response in Opposition ("Response"), [ECF No. 290], on June 24, 2026. Plaintiffs filed their Reply in Support ("Reply"), [ECF No. 294], on June 29, 2026. Having carefully considered the Motions, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Summary Judgment on Defendant's Second, Third, and Fourth Affirmative Defenses, [ECF No. 274], is **GRANTED** as set forth herein.

## BACKGROUND

The factual background of this case has been exhaustively recounted elsewhere in the record—most recently in the Court's Order Denying Defendant's Motion for Summary Judgment, [ECF No. 317]. Accordingly, the Court summarizes it only to the extent relevant to evaluating the issues presented in the instant Motion.

On February 15, 2022, Plaintiffs Helena Urán Bidegain, Xiomara Urán, and Mairee Urán Bidegain filed their Complaint, [ECF No. 1], against Defendant Luis Alfonso Plazas Vega. Plaintiffs brought this action pursuant to the Torture Victim Protection Act ("TVPA"), codified at 28 U.S.C. § 1350, in their individual capacities and on behalf of the estate of their late father, Carlos Horacio Urán Rojas ("Magistrate Urán"). Their allegations arise from the siege of the Palace of Justice that took place on November 6, 1985 in Bogotá, Colombia. *See generally* Compl. Plaintiffs allege that their father, Magistrate Urán, was among the civilians killed in the siege and that Defendant, a lieutenant colonel in the Colombian Army who led the military units charged with retaking the Palace of Justice, was responsible for his torture and extrajudicial killing. *See id.* at ¶¶ 2, 6, 19. Plaintiffs' Complaint asserts two counts against Defendant pursuant to the TVPA—one for the extrajudicial killing of Magistrate Urán and another for the torture of Magistrate Urán. *See* Compl. at 17–19.

Defendant filed his Answer and Affirmative Defenses, [ECF No. 61], on April 27, 2023, in which he raised four affirmative defenses. In his first affirmative defense, Defendant asserted that "Plaintiffs' claims are barred because they have not exhausted their remedies in Colombia." Answer at 14. In his second affirmative defense, he asserts "Plaintiffs' claims are barred by the applicable statute of limitations," pointing to the TVPA's ten-year statute of limitations. *Id.* And his third and fourth affirmative defenses assert that he "did not subject Dr. Urán to torture" and "did not extrajudicially kill Dr. Urán." *Id.* at 14–15. In support of the third and fourth affirmative defenses, Defendant explains that "Colombia's Supreme Court held that COL Plazas Vega had nothing to do with and did not know of the torture or extrajudicial killing of the Palace hostages." *Id.* Thus, "[b]ecause he was not involved in such activities he cannot be held liable for same [and t]his Court should provide full faith and credit to this prior judicial determination." *Id.*

On November 16, 2023, Plaintiffs moved for summary judgment on Defendant's first affirmative defense regarding Plaintiffs' failure to exhaust their administrative remedies in Colombia. *See* [ECF No. 90]. Plaintiffs argued that "Defendant has not carried his substantial burden of proving that there exist adequate and available remedies in Colombia that Plaintiffs did not exhaust" and "the unrebutted evidence affirmatively shows that Plaintiffs did exhaust all adequate and available remedies in Colombia for the death of Magistrate Urán nearly forty years ago, going above and beyond their obligations by exhausting remedies not required by the TVPA." *Id.* at 6. The Court agreed and granted summary judgment in favor of Plaintiffs on Defendant's first affirmative Defense, holding that "Defendant is unable to meet his substantial burden of demonstrating that any of his four proposed legal remedies are adequate and available to Plaintiffs in this case." [ECF No. 137] at 15.

On May 26, 2026, Plaintiffs filed the instant Motion for Summary Judgment on Defendant's Second, Third, and Fourth Affirmative Defenses, [ECF No. 274]. Plaintiffs argue that summary judgment in their favor is warranted on Defendant's second affirmative defense because "[t]he TVPA's ten-year limitations period was equitably tolled during, *inter alia*, the time that Defendant was absent from the United States and beyond the jurisdiction of U.S. courts." Mot. at 7. And Plaintiffs argue that summary judgment in their favor is proper on Defendant's third and fourth affirmative defenses because "[t]he Colombian Supreme Court decision regarding that criminal proceeding . . . has no preclusive effect on Plaintiffs here." *Id.*

**<u>LEGAL STANDARD</u>**

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED R. CIV. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the

evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted). The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the moving party shoulders its initial burden, the burden shifts to the non-moving party to "demonstrate the existence of evidence that would support a verdict in its favor." *United of Omaha Life Ins*, 894 F.2d at 1557 (citing *Celotex*, 477 U.S. at 322-23). "If reasonable minds might differ on the inferences arising from undisputed facts, then [a court] should deny summary judgment." *Hinesville Bank v. Pony Exp. Courier Corp.*, 868 F.2d 1532, 1535 (11th Cir. 1989).

However, a different analysis applies when affirmative defenses are contested at the summary judgment stage. *See United States v. Tubbs*, No. 19-80553, 2019 WL 7376706, at *2 (S.D. Fla. Nov. 22, 2019). It is the defendant who bears the burden of proof at trial as to the applicability of any affirmative defenses. *See Thorsteinsson v. M/V Drangur,* 891 F.2d 1547, 1550–51 (11th Cir. 1990). Thus, when a plaintiff moves for summary judgment on a defendant's affirmative defense, "the defendant bears the initial burden of showing that the affirmative defense is applicable." *Tubbs*, 2019 WL 7376706, at *2 (citing *Blue Cross & Blue Shield of Alabama v.*

*Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)). Then, the burden shifts to the plaintiff to demonstrate that the affirmative defense does not apply. *Id.*

**ANALYSIS**

**A. Defendant's Second Affirmative Defense**

Here, Defendant fails to make a showing that Plaintiffs' claims are barred by the TVPA's 10-year statute of limitations. As such, summary judgment is warranted in favor of Plaintiffs on Defendant's second affirmative defense.

Defendant's second affirmative defense states:

> **Plaintiffs' claims are barred by the applicable statute of limitations**: Plaintiffs filed the present action under the Torture Victim Protection Act ("TVPA") on February 15, 2022—almost 37 years after the incidents alleged by Plaintiffs occurred. Accordingly, Plaintiffs' claims are time-barred as "no action shall be maintained under [the TVPA] unless it is commenced within 10 years after the cause of action arose." *See* 28 U.S.C. § 1350(2)(c).

Answer at 14. In the instant Motion, Plaintiffs argue that there is "no genuine issue that Plaintiffs' TVPA claims are timely" because the TVPA's ten-year statute of limitations is subject to equitable tolling while a defendant is outside the United States and thus beyond the jurisdictional reach of its courts. *See* Mot. at 12–13. Plaintiffs are correct that the legislative history of the TVPA, Eleventh Circuit precedent, and the undisputed evidence in the record all confirm that the TVPA's statute of limitations does not bar their claims because it was tolled during the time Defendant was outside of the United States.

"Once a defendant shows that the applicable statute of limitations bars the claim, the burden shifts to the plaintiff to demonstrate that an exception or tolling provision applies." *Weitz*, 913 F.2d at 1552 n.13. In his second affirmative defense, Defendant points to the fact that Plaintiffs filed this action in 2022, almost 37 years after the events underlying this action took place. Answer at 14. And because the TPVA provides that "[n]o action shall be maintained . . . unless it is

commenced within 10 years after the cause of action arose," Plaintiffs' claims arising from events in 1985 could not be brought in 2022. *Id.* (citing 28 U.S.C. § 1350(2)(c)).

However, as the Eleventh Circuit emphasized in *Jean v. Dorelien*, "the statute of limitations must be tolled at least until [the defendant] entered the United States and personal jurisdiction could be obtained over him." 431 F.3d 776, 779–80 (11th Cir. 2005). In so holding, the opinion invoked Senate Report 102-249, which expressly disclaimed that the then-proposed TVPA's "statute of limitation should be tolled during the time the defendant was absent from the United States.[.]" *Id.* at 780 (quoting S.Rep. No. 102–249, at 11 (1991)); *see also Arce v. Garcia*, 434 F.3d 1254, 1262 (11th Cir. 2006) ("Congress clearly intends that courts toll the statute of limitations so long as the defendants remain outside the reach of the United States courts or the courts of other, similarly fair legal systems.").

Here, it is undisputed that Defendant moved to the United States on February 16, 2016. Plaintiffs' Statement of Undisputed Material Facts ("P's SUMF"), [ECF No. 274-1] ¶ 20; Defendant's Counterstatement of Material Facts ("D's CMF"), [ECF No. 291] ¶ 20. It is also undisputed that between 1985 and 2016, Defendant's brief visits to the United States did not amount to more than two months collectively. P's SUMF ¶ 19; D's CMF ¶ 19. Finally, it is undisputed that Defendant admitted in November 2024 that he had resided in the United States for less than 10 years in the aggregate. P's SUMF ¶ 22; D's CMF ¶ 22. Accordingly, there is no dispute of material fact that Defendant had been in the United States, and subject to the jurisdiction of the American judicial system, for fewer than 10 years at the time this action was filed on February 15, 2022.

Defendant devotes only two paragraphs of his Response to argue that Plaintiffs fail to establish that the statute of limitations was tolled as a matter of law. *See* Resp. at 15–16. Defendant

acknowledges that the Eleventh Circuit has consistently held that the TVPA's statute of limitations is tolled until a defendant enters the United States, but he contends that it "did not eliminate the fact-intensive inquiry into whether a defendant was subject to jurisdiction or whether plaintiffs exercised reasonable diligence." *Id.* at 16. However, Defendant points to no evidence in the record that evinces a factual dispute as to whether he was present in the United States and subject to its jurisdiction for longer than ten years prior to the initiation of this suit. Nor does he identify any evidence in the record indicating that Plaintiffs failed to exercise reasonable diligence in bringing this suit.

Accordingly, Defendant has failed to raise a genuine issue of material fact as to whether Plaintiffs' claims are barred by the TVPA's statute of limitations. Summary judgment is therefore granted in Plaintiffs' favor as to Defendant's second affirmative defense.

**B. Defendant's Third and Fourth Affirmative Defenses**

Summary judgment in Plaintiffs' favor is also proper as to Defendant's third and fourth affirmative defenses, which state:

> **COL Plazas Vega did not subject Dr. Uran to torture:** Any person who subjects another to torture is liable to the tortured party. *See* 28 U.S.C. § 1350(2)(a)(1). Colombia's Supreme Court held that COL Plazas Vega had nothing to do with and did not know of the torture or extrajudicial killing of the Palace hostages. Because he was not involved in such activities he cannot be held liable for same. This Court should provide full faith and credit to this prior judicial determination.
>
> **COL Plazas Vega did not extrajudicially kill Dr. Uran:** COL Plazas Vega did not kill or order the killing of Dr. Uran. Colombia's Supreme Court held that COL Plazas Vega had nothing to do with and did not know of the torture or extrajudicial killing of the Palace hostages. Because he was not involved in such activities he cannot be held liable for same. This Court should provide full faith and credit to this prior judicial determination.

Answer at 14–15. By asserting these affirmative defenses and invoking the Full Faith and Credit Clause of the United States Constitution, Defendant suggests that the Court should give preclusive

effect to the Supreme Court of Colombia's December 15, 2025 decision, which overturned his prior conviction for his role in the forced disappearance of several other individuals during the Palace of Justice siege. *See* P's SUMF ¶¶ 16–18.

In their Motion, Plaintiffs argue that "the Colombian Supreme Court decision upon which Defendant's third and fourth affirmative defenses are predicated, is inadmissible and lacks preclusive or collateral estoppel effect on Plaintiffs in this action." Mot. at 14. Plaintiffs identify "several fatal flaws" that they claim each independently doom Defendant's third and fourth affirmative defenses. *See id.* at 9–11. The Court agrees that Defendant cannot invoke the Colombian Supreme Court's holding to establish that he cannot be held liable for the torture and extrajudicial killing of Magistrate Urán.

First off, Plaintiffs correctly note that the Colombian Supreme Court's decision is not entitled to full faith and credit by this Court. *See* Mot. at 15. The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other *State*." U.S. Cost. art. IV, § 1 (emphasis added). Accordingly, foreign judgments like that of the Colombian Supreme Court are not entitled to full faith and credit by American courts. *See Nicor Int'l Corp. v. El Paso Corp.*, 318 F. Supp. 2d 1160, 1173 (S.D. Fla. 2004). Plaintiffs also invoke the well-established proposition that "criminal acquittals do not, as a matter of law, preclude civil liability for causes of action arising from the same set of facts due to the differing standards of proof." *Camps v. Bravo*, No. 20-24294, 2022 WL 2805250, at *11 (S.D. Fla. May 17, 2022).

Nor can Defendant rely on the doctrines of res judicata or collateral estoppel to give preclusive effect to the Colombian Supreme Court's decision. The doctrine of res judicata, also known as claim preclusion, "bars the filing of claims which were raised or could have been raised

in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). Under this doctrine, a clam will be barred by prior litigation if "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* The third and fourth elements are not met here. Plaintiffs were not parties to Defendant's prior Colombian criminal proceedings, and the cause of action in this case—the alleged torture and killing of Magistrate Urán—was not at issue in the prior proceeding where Defendant was charged for the forced disappearance of other individuals. *See* P's SUMF ¶¶ 16–18; D's CMF ¶¶ 16–18.

Collateral estoppel, or issue preclusion, also does not apply. The doctrine of collateral estoppel "foreclose[es] relitigation of an issue that has already been litigated and decided." *Quinn v. Monroe County,* 330 F.3d 1320, 1328 (11th Cir. 2003). It requires that

> (1) the issue at stake is identical to one involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; (3) the determination of the issue must have been a critical and necessary part of the judgment in the prior litigation; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior litigation.

*McCulley v. Bank of Am., N.A.*, 605 F. App'x 875, 877–78 (11th Cir. 2015). As noted above, the issues regarding Magistrate Urán's torture and killing were not litigated and decided in Defendant's prior criminal proceedings in Colombia. *See* P's SUMF ¶¶ 16–18; D's CMF ¶¶ 16–18. And Plaintiffs did not have a full and fair opportunity to litigate this issue in the prior proceedings, as evidenced by the undisputed fact that Plaintiffs' mother sought to be included as a civil party but the request was denied because "the allegations surrounding Magistrate Urán's death were distinct from those pertaining to the individuals who had been forcibly disappeared by

the Colombian army and therefore did not fit within the scope of [the criminal proceeding]." *See* P's SUMF ¶¶ 12–13; D's CMF ¶¶ 12–13; *see also* [ECF No. 137] at 4.

For these reasons, Defendant's third and fourth affirmative defenses fail as a matter of law. Defendant's acquittal by the Colombian Supreme Court on charges for the forced disappearance of other individuals cannot be used to preclude liability for the torture and killing of Magistrate Urán. As such, summary judgment in favor of Plaintiffs is warranted on Defendant's third and fourth affirmative defenses.

Undeterred, Defendant also argues that his third and fourth affirmative defenses "do not ask this Court to hold that an acquittal automatically bars civil liability"—even though these affirmative defenses do just that. *Compare* Resp. at 3 *with* Answer at 14–15 ("Because he was not involved in such activities he cannot be held liable for the same."). Instead, he "asks this Court to recognize the final merits judgment of Colombia's highest criminal court and to afford appropriate respect to the factual determinations necessarily decided therein." Resp. at 3.

Defendant invokes "international comity" throughout his Response as the primary basis for the Court to recognize the Colombian Supreme Court's judgment and factual findings. *See generally* Resp. However, the Court has already rejected these very arguments in its Order Denying Motion to Dismiss and Motion for Judicial Notice. *See* [ECF No. 56]. In its prior Order, the Court emphasized that it "has the utmost respect for the judicial proceedings of sister countries, like Colombia . . . [b]ut here, Defendant's criminal proceedings simply did not involve these Plaintiffs or the subject matter of the case before this Court." *Id.* at 13.

And as Plaintiffs point out in their Reply, Defendant's Response "is essentially one large request for judicial notice, repeatedly exhorting the Court 'to recognize' the 'factual determinations' and findings contained in Defendant's alleged acquittal decision for the truth

asserted therein about Defendant's actions, command, control and role in the unlawful *especiales* system." *See* Reply at 10. To the extent Defendant asks the Court to take judicial notice of the findings contained within his prior criminal proceedings in Colombia, the Court has also rejected that request in its Order Denying Defendant's Motion for Summary Judgment. *See* [ECF No. 317] at 9–11.

## CONCLUSION

For the foregoing reasons, Defendant's second, third, and fourth affirmative defenses fail as a matter of law. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion, [ECF No. 274], is **GRANTED**. Summary judgment is **GRANTED** in favor of Plaintiffs as to Defendant's second, third, and fourth affirmative defenses.

**DONE AND ORDERED** in Miami, Florida this 1st day of September, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**